UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EMAD N. HAROUN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:16-cv-01511-JAR |
| ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HOMELAND SECURITY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants U.S. Department of Homeland Security; U.S. Citizenship Immigration Services ("USCIS"); Jeh Johnson, Secretary of Homeland Security; Leon Rodriguez, Director of USCIS; and Chester Moyer, Director of the St. Louis Field Office for USCIS's Motion to Dismiss (Doc. 6). The matter is fully briefed and ready for disposition. For the reasons set forth below, Defendants' motion will be granted.

## BACKGROUND

Plaintiff Emad Haroun is a citizen of Jordan who became a lawful permanent resident of the United States on December 31, 2008. (Complaint ("Compl.") at ¶¶ 3, 22). Since that time, Haroun has filed three N-400 Applications for Naturalization, two of which were denied.[1] This matter arises out of Haroun's third application, filed on September 11, 2014. (*Id.* at ¶ 6). Haroun

---

[1] Haroun's 2011 application, which was filed under a rule that allows the lawful permanent resident spouse of a United States citizen to apply for citizenship after three years, was denied because Haroun had divorced his wife by the time his interview was scheduled. (*Id.* at ¶ 4). His 2014 application was denied because Haroun had been issued a speeding ticket in Illinois and remained on probation for that ticket. (*Id.* at ¶ 5).

paid the filing fee, underwent biometrics and a background check, appeared for an interview, passed his civics and English exams, and provided additional documentation requested by USCIS. (*Id.* at ¶¶ 6-7). However, Haroun alleges USCIS refused to adjudicate Haroun's application, instead applying more stringent rules under a policy known as the Controlled Application Review and Resolution Program ("CARRP"). (*Id.* at ¶ 8). Haroun made repeated requests to USCIS to have his case decided and finally brought the instant action to compel USCIS to adjudicate his pending application for naturalization. (*Id.* at ¶¶ 10). According to Haroun, his application was delayed under CARRP, which prohibits USCIS field officers from approving an application with a potential "national security concern," instead directing them to deny the application or delay adjudication—often indefinitely—in violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 101 *et seq*. (*Id.* at ¶¶ 13-14).

### a. CARRP

To become a United States citizen through naturalization, an applicant must satisfy certain eligibility criteria under the INA. For instance, applicants must show that after being lawfully admitted to the United States, they have resided continuously in the United States for a period of five years and demonstrated good moral character. 8 U.S.C. § 1427. If an applicant satisfies the statutory requirements for naturalization, USCIS "shall grant the application." 8 C.F.R. § 335.3(a). If USCIS's final decision is to deny naturalization, the applicant may seek *de novo* review of the denial in the United States district court with jurisdiction over the applicant's place of residence. 8 U.S.C. § 1421(c). In such a proceeding, "the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Id.*

Haroun alleges that in April 2008, USCIS created CARRP, an agency-wide policy for identifying, processing, and adjudicating immigration applications that raise "national security concerns." (Compl. at ¶ 42). He claims that a "national security concern" arises when "an individual or organization has been determined to have an articulable link to prior, current, or planned involvement in, or association with, an activity, individual or organization" that "has engaged in terrorist activity" or who is a member of a "terrorist organization" under the INA. (*Id*. at ¶ 48).

If a USCIS officer identifies an application posing a "national security concern," the application is removed from the agency's routine adjudication track and thereafter subjected to CARRP's rules and procedures that guide officers to deny or delay adjudication of those applications. (*Id.* at ¶ 71). The first stage, "deconfliction," requires USCIS to coordinate with a law enforcement agency regarding questions to ask in interviews and issue requests for evidence. (*Id.* at ¶¶ 72-74). Haroun alleges USCIS often makes decisions to deny immigration applications because the Federal Bureau of Investigations requests or recommends the denial, not because the person was statutorily ineligible for the benefit. (*Id.* at ¶ 75). This allows law enforcement and intelligence agencies to directly affect the adjudication of a requested immigration benefit. (*Id.* at ¶ 74).

Next, CARRP directs officers to perform an eligibility assessment to determine "any possible reason to deny an application" to avoid valuable time and resources being unnecessarily expended on further investigation of the "national security concern." (*Id.* at ¶ 77). This results in officers inventing false or pretextual reasons to deny the applications. (*Id.*) If an officer cannot find a reason to deny the application, Haroun claims that CARRP instructs officers to

3

"internally vet" the "national security concern" using information available through the Department of Homeland Security's systems and databases, open source information, interviews, site visits, etc.  (*Id.* at ¶ 78).  Then, officers are instructed to again conduct "deconfliction" to determine the position of any interested law enforcement agency.  (*Id.* at ¶ 79).  If the "national security concern" remains and the officer cannot find a basis to deny the benefit, Haroun claims the application proceeds to "external vetting," during which time USCIS officers and law enforcement agents confirm the existence of the "national security concern."  (*Id.* at ¶¶ 80, 82).  CARRP authorizes officers to hold applications in abeyance for periods of 180 days to enable law enforcement agents and USCIS officers to investigate the "national security concern."  (*Id.* at ¶ 82).  The Field Office Director may extend the abeyance periods so long as the investigation remains open, and Haroun alleges that CARRP provides no outer limit on how long USCIS may hold a case in abeyance, despite the statutory requirement under INA that USCIS adjudicate a naturalization application within 120 days of examination.  (*Id.* at ¶¶ 82, 83).

In essence, Haroun's complaint takes issue with USCIS's delay in adjudication of applications when it cannot find a reason to deny the application by subjecting that application to CARRP.  (*Id.* at ¶ 87).  Haroun also claims that when an applicant files a mandamus action with the district court to compel USCIS to adjudicate a pending application, that filing often has the effect of forcing USCIS to deny the statutorily-eligible application because CARRP prevents agency field officers from granting an application involving a "national security concern."  (*Id.* at ¶ 87).  Haroun claims CARRP effectively creates two substantive regimes for immigration application and processing: one for those applicants subject to CARRP and one for all other applicants. (*Id.* at ¶ 88).  He claims CARRP results in extraordinary processing and adjudication

delays, often lasting many years, and baseless denials of statutorily-eligible immigration applications. (*Id.* at ¶ 90).

**b. Procedural History**

Haroun filed his Complaint in the Nature of Mandamus Arising from Defendants' Refusal to Adjudicate Plaintiff's Application for Naturalization on September 23, 2016. He requests (1) a declaration that CARRP violates the INA; (2) a declaration that Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 1001, *et seq.* by adopting CARRP without promulgating a rule and following the process for notice and comment; (3) an injunction prohibiting Defendants from applying CARRP to the processing and adjudication of Haroun's pending immigration benefit application; (4) an order requiring Defendants to rescind CARRP for failure to follow the notice and comment requirements under the APA; and (5) an order requiring Defendants to adjudicate his case immediately or remand the case to Defendants with an order to do so within a time certain.

On September 26, 2016, the Court issued summonses for all Defendants. On September 28, 2016, USCIS completed its adjudication of Haroun's N-400 application, and it was denied. (Doc. 7-1).[2] The basis for the denial was Haroun's lack of good moral character due to the

---

[2] The Court is "not precluded in [its] review of the complaint from taking notice of items in the public record" and outside the pleadings. *Papasan v. Allain*, 478 U.S. 265, 269 n. 1 (1986); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss"). Records subject to the Freedom of Information Act constitute public records. *See* 5 U.S.C.A. § 552. "Agency records" qualify as public records under the FOIA (*id.*), and applications for naturalization are agency records. *See Dent v. Holder*, 627 F.3d 365, 371 (9th Cir. 2010). Indeed, the U.S. Customs and Border Protection website identifies N-400 records as a common FOIA request and indicates that USCIS is the proper agency with which to submit such a request. *See* https://www.cbp.gov/site-policy-notices/foia/records# (last visited July 26, 2017). Therefore, the

"commission of unlawful acts both during and prior to the statutory [five year] good moral character period. (*Id.* at 3). On September 30, 2016, Haroun served the summons on the United States Attorney's Office for the Eastern District of Missouri under Federal Rule of Civil Procedure 4(i). (Doc. 7-2).

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' " meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Id.* at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). Ultimately, the question is not whether the claimant "will ultimately prevail ... but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## DISCUSSION

Defendants argue that Haroun's complaint should be dismissed because his application has been considered and denied, which renders his complaint moot. Defendants also argue that 8 U.S.C. § 1427 does not permit a private right of action, Haroun lacks standing to challenge

---

Court may take judicial notice of the documents attached to Defendants' Motion to Dismiss because they are public records.

CARRP, Haroun fails to state a claim under the APA, and Haroun fails to articulate a colorable procedural due process claim. In response, Haroun argues that under 8 U.S.C. § 1447, USCIS was deprived of jurisdiction to adjudicate his application once he filed his Complaint with the Court. As a result, he argues the Court has complete jurisdiction to provide him with the relief sought.

### a. Exclusive versus concurrent jurisdiction

As a threshold matter, 8 U.S.C. § 1447(b) allows an applicant to apply to the United States district court if USCIS fails to make a determination of his or her application within the time frame provided by statute. Generally, if USCIS makes a determination before the applicant files suit, the district court does not have jurisdiction to make a determination on the application, even if USCIS's determination is made beyond the 120-day period. *Al Hamati v. Gonzalez*, No. 4:09CV00676 ERW, 2010 WL 623716, at *3 (E.D. Mo. Feb. 18, 2010) ("While it is true that [US]CIS issued that ruling more than 120 days after the examination-in fact, it took over a year-a petitioner for naturalization does not retain the right to bring an action under § 1447(b) after [US]CIS has acted on the application."); s*ee also Langer v. McElroy,* 2002 WL 31789757, at *3 (S.D.N.Y. 2002) ("While [USCIS] may have taken more than the 120 days to make its decision, it eventually did make such a determination and thus jurisdiction [under § 1447(b)] cannot be based on this premise."); *see also Adiemereonwu v. Gonzalez,* 2005 WL 1206878, at *4 (N.D. Tex. 2005).

The issue before the Court is whether the Court may exercise jurisdiction where an application has been filed and adjudicated by USCIS while the lawsuit was pending. In other words, does § 1447(b) grant the Court exclusive or concurrent jurisdiction over an application for

7

naturalization?

The few circuit and district courts that have addressed the issue of whether § 1447(b) confers exclusive or concurrent jurisdiction on the district court once a plaintiff files a complaint are seemingly split, and the Eighth Circuit has yet to weigh in on the issue. Therefore, the Court will look to the language of the statute itself, the context in which it is used, and the broader context of the statute as a whole to make its determination. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340–41 (1997) (citations omitted).

Title 8, Section 1447(b) of the United States Code provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. **Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.**

8 U.S.C. § 1447(b) (emphasis added). Clearly, following the expiration of the 120–day period, jurisdiction is conferred to the district court by Congress. The question, however, is whether USCIS is divested of its jurisdiction when such a complaint is filed.

Several circuits have interpreted the language of § 1447(b) to grant exclusive jurisdiction to the district court. *See Aljabri v. Holder*, 745 F.3d 816, 820 (7th Cir. 2014); *Bustamante v. Napolitano*, 582 F.3d 403, 410 (2d Cir. 2009); *Etape v. Chertoff*, 497 F.3d 379, 385 (4th Cir. 2007); *United States v. Hovsepian*, 359 F.3d 1144, 1164 (9th Cir. 2004). Those circuits reasoned that Congress gave the district court the power to "determine the matter" once a naturalization petition is properly in front of it, and that it would be illogical to read this unqualified grant of power to give USCIS the prerogative to nullify the court's statutory power. *Aljabri*, 745 F.3d at

820; *Bustamante*, 582 F.3d at 406; *Etape*, 497 F.3d at 392. Further, those circuits found the central purpose of the statute, i.e. the reduction in waiting time for naturalization applicants, would be frustrated if district courts were required to share concurrent jurisdiction. *See Hovsepian*, 359 F.3d at 1163; *Etape*, 497 F.3d at 389. They opined that USCIS would no longer have much incentive to act within the 120-day period "because [USCIS] will retain jurisdiction…until the district court grants or denies the application, which takes significant additional time even in the most current of districts." *Hovsepian*, 359 F.3d at 1163; *see also Bustamante*, 582 F.3d at 410 (holding that divesting USCIS of jurisdiction over the application "provide[s] USCIS with an incentive to decide applications in a timely fashion or risk losing jurisdiction to decide those applications in the first instance."). The *Hovsepian* court also articulated a concern of judicial waste, stating:

> Under a scheme of concurrent jurisdiction, an applicant who has received no answer from [USCIS] could go to court under § 1447(b). In the meantime, however, [USCIS] could decide the matter against the applicant. But the applicant then would have the option to appeal the [USCIS's] denial under § 1421(c), and the district court would have de novo review. We do not believe that Congress intended such a judicially uneconomical procedure.

*Hovsepian*, 359 F.3d at 1163. Concurrent jurisdiction would also result in unnecessary duplication of factual investigations and legal analyses. *Id.*

However, numerous district courts, including this district, have disagreed, interpreting § 1447(b) to confer concurrent jurisdiction to the district court. *See, e.g. Turkmen v. Holder*, 4:09-cv-1042-HEA, 2010 U.S.Dist. LEXIS 120444 (holding that it could exercise jurisdiction when it dismissed as moot plaintiff's claims after USCIS adjudicated plaintiff's naturalization application); *Hamdan v. Chertoff*, 626 F. Supp. 2d 1119, 1124 (D.N.M. 2007); *Perry v. Gonzales*, 472 F. Supp. 2d 623, 630 (D.N.J. 2007); *Al-Saleh v. Gonzales*, No. 2:06-CV-00604 TC, 2007 WL

9

990145, at *2 (D. Utah Mar. 29, 2007); *Al-Tubaili v. Gonzales*, No. 206CV804 DAK, 2007 WL 2220550, at *1 (D. Utah July 30, 2007).

The Court finds these district court decisions to be well-reasoned and in line with the Court's reading of § 1447(b). First, nothing in the statute's plain language purports to divest USCIS of jurisdiction over application for naturalization. *See Hamdan*, 626 F. Supp. 2d at 1124. Rather, the text provides no more than a grant of jurisdiction to the district court if the applicant chooses to file in the district court. *Id.* at 1135. Interpreting this language to confer exclusive jurisdiction would require the Court to read the word "exclusive" into the statute, for which the Court finds no basis.

Further, interpreting the statute to confer concurrent jurisdiction is in line with the public policy behind § 1447(b). The clear purpose of § 1447(b) is to reduce unnecessary delay in resolution of citizenship disputes. *Hovsepian*, 359 F.3d at 1163 ("A central purpose of the statute was to reduce the waiting time for naturalization applicants.") (citing H.R.Rep. No. 101–187, at 8 (1989); 135 Cong. Rec. H4539–02, H4542 (1989) (statement of Rep. Morrison)); s*ee also Perry v. Gonzales*, 472 F. Supp. 2d 623, 628 (D.N.J. 2007) (citing Rochvarg, *Reforming the Administrative Naturalization Process: Reducing Delays While Increasing Fairness,* 9 Georgetown Immigration Law Journal 397 (1995)). The Court's goal should be to effectuate this intent.

"[P]ermitting the USCIS to continue its work even while a lawsuit is pending will advance the congressional goal of timely resolution of naturalization applications." *Al-Saleh*, 2007 WL 990145, at *2. "The fact that § 1447(b) gives an applicant the right to file suit in federal court…[is not enough], by itself, a sufficient indication that Congress intended to strip the USCIS of jurisdiction once a federal suit is filed." *Id.*; *see also Al-Tubaili*, 2007 WL 2220550, at *2

10

("[T]his court finds the better-reasoned view is that section 1447(b) does not divest the USCIS of jurisdiction."). USCIS is in the best position to decide naturalization applications based on their unique expertise and experience in the field of immigration and naturalization. The Court's construction of § 1447(b) "puts real teeth into § 1447(b) because if the USCIS does not do its work within the time Congress has provided, they run the risk that the Court may do it." *Hamdan*, 626 F. Supp. 2d at 1137. In fact, the Court's interpretation of § 1447(b) as conferring concurrent jurisdiction advances the intent of speeding up the application process under the INA.

In conclusion, the Court finds that USCIS properly exercised its jurisdiction over Haroun's application when it issued its denial while Haroun's lawsuit was pending before the Court.

### b. Mootness

Federal courts are courts of limited, not general, jurisdiction. *See Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 383 (1884). The existence of a case or controversy is a necessary element of every cause of action under Article III. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). Article III mootness is a jurisdictional bar and must be considered before reaching the merits of the case. *Arkansas AFL-CIO v. F.C.C.*, 11 F.3d 1430, 1435 (8th Cir. 1993). "One commentator has defined [Article III] mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)).

The main question in determining mootness "is whether a change in circumstances since the beginning of the litigation precludes any occasion for meaningful relief." *Old Bridge Owners*

11

*Coop. Corp. v. Township of Old Bridge*, 246 F.3d 310, 314 (3d Cir. 2001). In Count VI, Haroun claims a violation of 8 U.S.C. § 1447(b) because USCIS failed to adjudicate his application for naturalization within the 120-day deadline. (Compl. at ¶ 117). He requests that the Court exercise its authority to grant his naturalization application or remand the matter to USCIS with instructions. (*Id.*). Since Haroun filed this lawsuit, USCIS completed its review and denied Haroun's application, rendering the relief sought by Haroun moot.[3]

"Occasionally, due to the passage of time or a change in circumstance, the issues presented in a case will no longer be "live" or the parties will no longer have a legally cognizable interest in the outcome of the litigation. *Arkansas AFL-CIO*, 11 F.3d at 1435. "When such changes prevent a federal court from granting effective relief, the case becomes moot." *Id.* Here, the passage of time rendered the relief sought by Haroun in Count VI moot, and mootness is a jurisdictional bar. As a result, Count VI will be dismissed without prejudice.

**c. Standing**

The Court now turns to Haroun's remaining counts challenging CARRP on a number of constitutional and statutory grounds. Defendants argue that Haroun does not have standing to bring these claims, and the Court agrees.

"[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Standing is a threshold question in every federal case. *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975). As an aspect of justiciability, the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of

---

[3] The Court further notes that Haroun's application was adjudicated before USCIS was even served.

federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Id.* (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)). The Article III judicial power exists only to redress or otherwise protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. *Id.* "A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Id.* (citing *Linda R.S. v. Richard D*., 410 U.S. 614, 617 (1973)).

The party invoking federal jurisdiction bears the burden of demonstrating that he has standing to sue. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). The "irreducible constitutional minimum of standing" requires an "injury in fact" that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotations omitted). The party invoking federal jurisdiction must also demonstrate "a causal connection between the injury and the conduct complained of," and "a likelihood that a court ruling in [his] favor would remedy [his] injury." *Id*. As standing is a threshold determinant, he must clearly allege facts demonstrating standing. *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

While the allegation of a deprivation of citizenship can suffice in certain circumstances as an injury-in-fact (*see Breyer v. Meissner*, 214 F.3d 416, 423 (3d Cir. 2000)), when a plaintiff seeks declaratory or injunctive relief, he seeks to regulate ongoing or future conduct by alleging a future injury. *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). A plaintiff seeking prospective relief against future conduct of defendants who caused injury in the past must show that he faces a real and immediate threat of future injury. *Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005). A

13

court cannot grant declaratory relief when there is no "immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125-26 (1974)).

Haroun has not alleged a substantial likelihood of future injury. He argues that his interest in United States citizenship has been adversely affected by the application of CARRP to his naturalization application. (Compl. at ¶¶ 95, 100, 104, 109, 114). In actuality, each of his constitutional and statutory claims is grounded in the alleged procedural deficiencies in USCIS's review of his application—a review that, in actuality, has already come to an end.

"[A] prospective remedy will provide no relief for any injury that is, and likely will remain, entirely in the past." *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1376 (1st Cir. 1992). Haroun did not amend his complaint after his application was denied by USCIS. The Complaint itself contains no allegations that there exists a real and immediate threat that Haroun's application would be before USCIS again and that USCIS would again apply these purportedly unlawful procedures to his application. On the contrary, the Complaint contains allegations that USCIS did apply these procedures to his application, which resulted in the unlawful delay of his application. Even had Haroun alleged that USCIS would apply CARRP to him again, that allegation would amount to nothing more than the allegation of a hypothetical injury, which is insufficient to confer standing for declaratory relief.

The Court concludes Haroun has no present interest, other than vindication, in a declaratory judgment on his claims arising from USCIS's application of CARRP as to him. *See Carver Middle Sch. Gay-Straight All. v. Sch. Bd. of Lake Cty., Florida*, 842 F.3d 1324, 1330 (11th Cir. 2016). As a result, he has failed to allege an injury sufficient to confer standing, and Counts

I-V will be dismissed without prejudice. Haroun does have the right to challenge the denial of his application and may in that context raise issues regarding CAARP.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 6) is **GRANTED**.

**IT IS FURTHER ORDERED** that the matter is dismissed without prejudice.

An Order of Dismissal will be filed separately.

                                      JOHN A. ROSS
                                      UNITED STATES DISTRICT JUDGE

Dated this 26th day of July, 2017.